## THE VOLUNTEER.

### THE SYRACUSE.

## McCLELLAN v. THE VOLUNTEER AND THE SYRACUSE.

*(District Court, S. D. New York. February 2, 1892.)*

1. COLLISION—HELL GATE—STEAMER'S DUTY TO SHEER IN ACCORDANCE WITH SIGNALS —TIDE.

    When vessels are approaching in Hell Gate, and signals have been exchanged, it is their duty to sheer to one side or another, in accordance with such whistles. This rule is especially obligatory on a vessel meeting another which is coming with a strong tide.

2. SAME—STATEMENT OF CASE—CROSSING BOWS.

    The tug Volunteer, coming from the Harlem river with a car-float, and bound down the easterly channel past Blackwell's island, saw below Horn's Hook the tug Syracuse, with libelant's canal-boat, approaching in the strong flood-tide. The Volunteer blew two whistles, indicating that she would pass ahead of the Syracuse, and then pursued very nearly her usual course down the channel. The Syracuse answered with two whistles, and drew in close to the New York shore. The Volunteer kept very near to the point of the Hook, and owing to her miscalculation as to the speed of the approach of the Syracuse, she did not sheer to port soon enough, nor give room to the Syracuse to pass astern, and the vessels collided. *Held*, that the Volunteer, in crossing the bows of the Syracuse, took the risk of failing to sheer out in time, in accordance with her signal, and was solely responsible for the collision.

In Admiralty. Libel by William R. McClellan against the steam-tugs Volunteer and Syracuse, for the loss of the canal-boat Ethel by collision. Decree for libelant against the Volunteer, and libel dismissed as to the Syracuse.

*Carpenter & Mosher*, for libelant.

*Hyland & Zabriskie*, for the Syracuse.

*Goodrich, Deady & Goodrich* and *Mr. Foley*, for the Volunteer.

BROWN, District Judge. On the 19th of March, 1891, about 2:30 P. M., the tide being flood, as the steam-tug Volunteer having a car-float on her starboard side, was passing Horn's Hook in coming from the Harlem river, and intending to go down in the easterly channel past Blackwell's island, her float came in collision with the libelant's canal-boat Ethel, which was going up river in tow of the steam-tug Syracuse and on her starboard side, and the Ethel soon after sank. The libel was filed to recover the value of the canal-boat and cargo, with the personal effects of those on board.

There is considerable difference in the testimony concerning the precise place of the collision, whether immediately off Horn's Hook at

Eighty-Ninth street, or 200 or 300 feet below that point. But I think this difference is not very material. The pilot of the Volunteer saw the Syracuse quite a distance below the point, and gave her a signal of two whistles, to which the Syracuse immediately replied with two whistles. This imported that the Volunteer would go across the bow of the Syracuse. That would be pursuing her usual course towards the eastward of Blackwell's island. I have no doubt she did pursue very nearly her usual course; that she did not make any such sheer to starboard as to point towards the New York shore, but that she went very near to the shore at the point of the Hook, and that the collision was caused thereby. The evidence leaves no doubt that the Syracuse on the other hand hauled in as near as it was prudent to go to the New York shore, as it was proper she should after the signals, and that she went as near shore as the Volunteer had any right to expect her to go. The Syracuse also slowed, and soon after stopped and backed. The bow of the Ethel struck the car-float near her stern. Several witnesses for the Volunteer place her stern at the time of collision 200 feet from the shore; the witnesses for the Syracuse make her much nearer; and Hommel, an independent witness on the Three Brothers, just astern of the Volunteer, who was in the best place possible to see the position of the Volunteer, says the Volunteer was running only about 100 feet off the Hook, so that he had to change his course and back off.

Without entering further into the details of the conflicting testimony, no reason is shown on the part of the Volunteer why, after she gave her signal of two whistles and received the assenting answer of the Syracuse, which was on the Volunteer's starboard bow, she did not shape her course more to port, so as to give more room for the Syracuse to pass between her and the shore. The Syracuse was coming up with a strong flood-tide, and there was the more reason, therefore, why the Volunteer should give her sufficient room to pass, and not block her way. *The Galatea*, 92 U. S. 439. She had no right to expect the Syracuse to come to a stand-still in such a tide-way as there was there, to enable her to avoid the Volunteer, when the Volunteer, by shaping her course more to the left, could have avoided her. The Syracuse, on the other hand, did have the right to assume that the Volunteer would keep to port enough to let the Syracuse go past, as nothing prevented the Volunteer from doing so. The Volunteer, when she gave her signal of two whistles, was presumed to know what she could do, and on what to calculate; and in giving a signal of two whistles she took the risk of giving the Syracuse sufficient room to pass astern. The collision came from the miscalculation by the Volunteer as to the rapidity of the approach of the two vessels, and from her consequently going too near the point of the Hook.

I cannot find upon the evidence that the Syracuse was dilatory in backing; that is to say, that she did not reverse as soon as she had reason to suppose that the Volunteer was not shaping her course to port sufficiently and in time to allow the Syracuse room to pass. *The Greenpoint*, 31 Fed. Rep. 231; *The F. & P. M. No. 2*, 44 Fed. Rep. 701.

Judgment should, therefore, be against the Volunteer only, against which a decree for the libelant may be taken, with costs; and as respects the Syracuse, the libel is dismissed, with costs.